IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL G.L.,[1]                                            Case No. 3:22-cv-00081-JR

      Plaintiff,                                            OPINION AND ORDER

     v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

      Defendant.

RUSSO, Magistrate Judge:

    Plaintiff Michael G.L. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Title II Disability Insurance Benefits. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

Born in November 1971, plaintiff alleges disability beginning November 19, 2019, due to chronic pain syndrome, chronic fatigue syndrome, fibromyalgia, irritable bowel syndrome ("IBS"), post-traumatic stress disorder ("PTSD"), anxiety disorder, depression, and panic disorder. Tr. 161, 180. His application was denied initially and upon reconsideration. Tr. 105-112. On March 18, 2021, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 44-65. On May 13, 2021, the ALJ issued a decision finding plaintiff not disabled. Tr. 22-35. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 3-8.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 24. At step two, the ALJ determined the following impairments were medically determinable and severe: "right ankle fracture, status post open reduction internal fixation (ORIF); fibromyalgia; status post hernia repair; irritable bowel syndrome; diverticulitis; obesity; depression; anxiety; and posttraumatic stress disorder (PTSD)." *Id.* At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 25.

Because he did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) except:

> "[H]e can never climb ladders, ropes, or scaffolds. He can frequently climb ramps and stairs, stoop, kneel, crouch, and crawl. He can tolerate occasional exposure to

Page 2 – OPINION AND ORDER

extreme cold and vibration. He can tolerate no exposure to hazards such as unprotected heights and moving mechanical machinery. He can understand, remember, and carry out simple, routine tasks in a routine work setting involving no more than occasional workplace changes. He can never perform rapid pace assembly line work. He can tolerate occasional superficial interaction with the general public."

Tr. 27.

At step four, the ALJ determined plaintiff is unable to perform any past relevant work. Tr. 33. At step five, the ALJ concluded, based on the VE's testimony, that there existed a significant number of jobs in the national economy plaintiff could perform despite his impairments, such as mail room clerk, office cleaner, and office helper. Tr. 34-35.

## DISCUSSION

Plaintiff asserts that the ALJ improperly evaluated the opinion of treating physician Mischa Ronick, M.D. Alternatively, plaintiff argues the ALJ must factor plaintiff's need for unscheduled work breaks into the RFC.

Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which opinions are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive the opinions are."[2] *Kevin R. H. v. Saul*, 2021 WL 4330860, *4 (D. Or.

---

[2] As the Ninth Circuit recently explained, "[u]nder the revised regulations . . . a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The new regulations nonetheless "displace our longstanding case law requiring an ALJ to provide" different levels of reasoning (i.e., "clear and convincing" or "specific and legitimate") based on a hierarchy of medical sources. *Id.* at 787.

Page 3 – OPINION AND ORDER

Sept. 23, 2021). The ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.*

On January 22, 2020, Dr. Ronick completed a medical source statement providing a medical opinion as to plaintiff's condition and ability to work. Tr. 401-02. Dr. Ronick opined that plaintiff's symptoms are severe enough to frequently interfere with the attention and concentration to perform simple work-related tasks. Tr. 401. He noted that plaintiff would require unscheduled breaks lasting 15-60 minutes each, every 1-2 hours in an eight-hour workday. *Id.* He reasoned that plaintiff would need to recline or lie down in excess of the typical work breaks. *Id.* Lastly, Dr. Ronick opined that plaintiff would likely be absent from work more than four times per month due to his physical impairments. Tr. 402.

The ALJ determined Dr. Ronick's opinion was "not persuasive." Tr. 33. Regarding the supportability factor, the ALJ reasoned that Dr. Ronick's opinion is not well supported regarding how the plaintiff's impairments require these limitations. *Id.* The ALJ further reasoned that plaintiff's reported need for frequent trips to the restroom is not supported by the record, because there were times plaintiff reported to doctors that he was experiencing constipation. Tr. 30.

The ALJ's findings are not supported by substantial evidence. In *Crane v. Shalala*, 76 F.3d 251 (9th Cir. 1996), an ALJ permissibly rejected three psychological evaluations completed via "check-off reports" because they "did not contain any explanation of the bases of their conclusions." *Id.* at 253; *see also Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012). However, if a check-box questionnaire is "based on significant experience . . . and supported by numerous records . . . [it is] entitled to weight that an otherwise unsupported and unexplained

Page 4 – OPINION AND ORDER

check-box form would not merit." *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014). *See also*, *Popa v. Berryhill*, 872 F.3d 901 (9th Cir. 2017) (as amended) ("[T]he fact . . . an 'other source,' provided information in a Commissioner-supplied check-box form provides no reason to reject her opinions, much less a germane reason.") Dr. Ronick's medical source statement is a check-box evaluation, that doesn't provide space for written explanations. Tr. 401-02. However, the check-box evaluation is based on significant experience and supported by numerous records. These records include: (1) a computed tomography ("CT") scan from October 2018 showing advanced diverticulitis of the descending colon, (2) a colonoscopy examination from January 2019 showing evidence of moderate diverticulitis in the sigmoid colon, and (3) multiple medical reports from many doctors demonstrating that plaintiff is experiencing serious gastrointestinal distress. Tr. 720, 338, 417-18, 333-34. Given that the medical source statement is based on significant experience and supported by numerous records, it is entitled to weight that an otherwise unsupported check-box form would not merit.

Additionally, the ALJ's rationale for discrediting plaintiff's need for frequent trips to the restroom due to previous reports of constipation is inappropriate when given proper context. IBS is "characterized by symptoms including abdominal pain . . . and changed bowel habits, such as diarrhea, constipation, or alternating diarrhea and constipation." *Salix Pharmaceuticals, Ltd. v. Norwich Pharmaceuticals, Inc.*, No. 20-430-RGA, 2022 WL 3225381 (D. Del. Aug. 10, 2022). Courts have acknowledged that people with gastrointestinal issues can often experience both constipation and diarrhea within the same day. *See Jones v. Shinseki*, 26 Vet.App. 56, 63 (2012). When determining disability ratings for people with IBS, it is comparable to irritable colon syndrome ("ICS"), where the maximum 30% rating is warranted for a "severe" disability with "diarrhea, or alternating diarrhea and constipation, with more or less constant abdominal

Page 5 – OPINION AND ORDER

distress." 38 C.F.R. § 4.114, DC 7319. Given that exhibiting symptoms of constipation and diarrhea simultaneously is both legally and medically recognized, plaintiff's impairments should not be discredited due to being "unsupported." In other words, plaintiff's presentation of periods of constipation throughout his treatment history is supported by Dr. Ronick's opinion that plaintiff requires frequent trips to the restroom throughout the workday, due to plaintiff's IBS and diverticulitis.

As to the consistency factor, the ALJ found that Dr. Ronick's opinion is inconsistent with the longitudinal treatment history and objective findings. Tr. 33. The ALJ reasoned that the plaintiff's abdominal cramping and urgent, frequent defecation support a limitation to light work, but the plaintiff's responsiveness to antibiotics and frequency of diverticulitis flare ups did not support a greater degree of limitation. Tr. 30. The ALJ specifically relies on treatment records from July 2020, where gastroenterologist, Jeffrey Buehler, M.D. noted that plaintiff's IBS was "overall stable." Tr. 874. Dr. Buehler stated that plaintiff's diverticulitis was responsive to antibiotics, with no recent diverticulitis attacks. Tr. 875. Dr. Buehler recommended plaintiff follow up as needed, and there are no further records from Dr. Buehler after July 2020. Tr. 874.

However, a holistic review of the record reveals that Dr. Ronick's recommended break time limitations do not conflict with plaintiff's response to various treatments. Plaintiff first started seeing Dr. Ronick in September 2019, where plaintiff reported experiencing pain 70 percent of the time ranging in severity from 1-6 on a scale of 1-10. Tr. 348-49. Plaintiff did not experience significant improvement with a trial of hyoscyamine, so Dr. Ronick recommended a trial of dicyclomine. Tr. 349. There was a very brief report of improvement in November 2019, when plaintiff visited Dr. Ronick for an annual examination Tr. 333-34. During the examination, plaintiff reported treatment for diverticulitis, noting his symptoms had improved including a

reduction in pain. Tr. 334. However, during that same examination, plaintiff reported that he was experiencing daily pain due to his IBS as well as abdominal cramping, stool changes, and fatigue. Tr. 333. Plaintiff conveyed that his IBS symptoms had not improved with his dicyclomine prescription, so Dr. Ronick prescribed hyoscyamine as needed for ongoing pain. *Id.* Essentially, during this annual examination, plaintiff simply reported an improvement in his diverticulitis, and no improvement with his IBS. Tr. 333-34.

In January 2020, Dr. Ronick indicated that plaintiff's IBS symptoms had failed to show sustained improvement despite being prescribed multiple antispasmotic medications. Tr. 468. Additionally, plaintiff's testimony concerning the severity of his symptoms is consistent with Dr. Ronick's recommended break time limitations. Plaintiff testified that he suffers from IBS which causes flareups of abdominal cramps and diarrhea multiple times throughout the week. Tr. 53. He further testified that on an average workday, he would likely need to use the restroom at least six times, and on bad days, 10-15 times. *Id.* "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (citing *Holohan v. Massamari*, 246 F.3d 1195, 1205 (9th Cir. 2001)). As here, plaintiff's debilitating symptoms fluctuating in severity is not an adequate basis for the ALJ to conclude that Dr. Ronick's opinion is inconsistent with the record.

Accordingly, the ALJ's discrediting of Dr. Ronick's opinion is not supported by substantial evidence.

**Remedy**

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ committed harmful legal error by failing to properly evaluate Dr. Ronick's opinion when determining plaintiff's RFC. Further proceedings would nonetheless be useful regarding the extent of plaintiff's disabling gastrointestinal impairments, such that crediting Dr. Ronick's opinion as true and/or remanding for the immediate payment of benefits (either under a listing or otherwise) is improper.

On one hand, it is undisputed that plaintiff's IBS and diverticulitis are longstanding and have persisted at significant levels since 2018. On the other hand, the record is unclear as to the extent of improvement and stabilization from prescribed medications. In particular, the record indicates that the most recent doctor's visit with Dr. Buehler regarding plaintiff's gastrointestinal issues indicated that plaintiff's IBS was "overall stable", and that plaintiff's diverticulitis was responsive to antibiotics given there had been no recent diverticulitis attacks. *Id.* Dr. Buehler also

instructed plaintiff to follow up as needed, but there are no further records from Dr. Buehler since July 2020. Tr. 874. The lack of medical records from July 2020 onwards makes the record ambiguous concerning the progression and limiting effects of plaintiff's symptoms.

In light of the lack of a fully developed and unambiguous record, the appropriate remedy is to remand to the Commissioner for further proceedings to reconsider plaintiff's impairments given the medical opinion of Dr. Ronick and take any further action necessary to complete the administrative record and issue a new decision.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 23rd day of January, 2023.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge